OPINION of the court, by
Judge Bibb.
-Machir was complainant in chancery, praying relief against the ekler grant obtained upon an entry in the name of John Tabb, and in the mean time for an injunction against a judgment in ejectment. The equity set up by the complainant rests upon two grounds.
1st. As having the superior and prior equity by virtue of two entries ; the one made on the 11th of May, 1780, in the name of John Williams, assignee of William Pannel, on a treasury warrant for 1000 acres of "land, the other made on the 22d of May, 1780, in the name of John Williams, on a treasury warrant for 100Q acres, adjoining the former entry.
2nd. As deriving a claim to 250 acres under Tabb’s claim, by an agreement between Craig and Kennedy.
The circuit court of Mason decreed in favor of the complainant, in part upon the first ground, and partly upon the second ground of equity. To reverse this decree, Craig has appealed to this court.
The two entries alluded to depend on previous entries, viz:
1st. “Thomas Williams enters 400 acres by certificate, &c. lying on the second right hand fork of Lawrence's creek, that heads with the waters of Licking, to include his improvement made by Charles Lecompt. February 21st, 1780.”
A location to adjoin a fettlement and preemption before the pre empticn was located^ ihall be adjoined to the iettlement only
Same principle, Crew's bars •vs fcurred's heir, Hu. 435 • — Wilhums •vs,
'Taylor-- ' ilfon vs. M'Ghu — . Wara ar.A Ken-tor, vs L-.e, as-ftgmt cj Yorng— Kenny vs-Whit-leage, Hughes j 10-134 ->■ ■ » Swearingen vs. Smith) fpring 1809 — M'Ghee vs. Thompson» fall 1809*
A location to join another on the fourh, and extending fouth to include lome improvements made by S. B* —not fupport* ed, becauie the improvements were not ¿hewn*
Same princi* $\t ¡Williams vs Toy lor ¡ poft, Smith vs. Farley, poft, M'Clure vs0 Winhck, poft, Hcglatid vs* Shepherd, poft, M'Gbee vs* Thonipjoti) poft, Hendricks vsé Bellf poft, Cox vs. Smith» iHar.411 — WiU fon <vs. M'Gbee *~~tVard and Kenton an. Lee, újjignet Young locale víGíu. bway, Decern. 2S09,
*11 Sd. “ On the motion of William Stewart for leave to remove a location which was granted to Ephraim Pey-ton, assignee of William Ginnings, the 21st inst. sufficient cause appearing, it is granted him, lying on the right hand fork of Lawrence's creek, to join Thomas Williams on the west, and to extend west for quantity : ordered, that a certificate issue accordingly, and that the said Stewart be entered as assignee of Peyton, as it appears that the old certificate was assigned to said Stewart. Court at St. Asaph’s, April 26th, 1780.”
3d. “ John Williams, assignee of William Panncll, enters 1000 acres of land, on a treasury warrant, ike. on the main branch of Lee's creek ; adjoining William Stewart's settlement and pre-emption on the west side ; a branch of the Ohio river, emptying into the Ohio four miles below Lawrence’s creek. May 11th, 1780.”
4th. “ John Williams enters 1000 acres of land, on a treasury warrant, &c. on the head waters of Lee’s creek, adjoining his former entrv of 1000 acres on the south, to extend south, including some of the -waters of the north fork of Licking, and some improvements made by Simon Butler. May 22c!, 1780.”
In the case of Lee vs. Wall, decided at the last term, the entry of Thomas Williams for 400 acres, by certificate, &c. was adjudged invalid, because the description of “ his improvement made by Charles Lecompt,” was fallacious, being on the first right hand fork of Lawrence’s creek instead of the second, and the improvement did -not appear to have acquired that notoriety' which could correct the delusive description. But in the present case, the admissions of the parties have placed this entry on a different foundation. For although it is admitted, that the improvement is on thefirst right hand fork of Lawrence’s creek instead of the second, yet they have agreed, “ that the letter A on the connected plat, is the place where Thomas Williams’s improvement was made by Charles Lecompt, and is the same called for in Williams’s certificate ; and that the said improvement was an object of notoriety,.before and at the time of granting Williams’s certificate, and making his entry for settlement.”
Upon the facts thus admitted, the courtis of opinion, that the entry of 400 acres aforesaid is good in law. The call for the second right hand fork, ought to be *12 considered as a genera! description of tbe part of ibe country in which the improvement was situate, not as a locative call, and the mistake as to the fork is corrected by the admitted notoriety of the improvement. Upon this view of the entrv, this court accords wdth the circuit court in the figure and position which should be given to the entry ; that is to say, a square, with lines to the cardinal points, with the improvement at the intersection of the diagonals.
Craig having a. greed with Ken. nedy to convey »50 acres to Machir in case he lucceedej a-gainft the entry under which Machir claimed — Craig ,n lifts he was not bound to convey to Machir, becaufe of an equity he, C. had againft Kennedy. By the court — if he had an eqau ty a gain ft Ken fiedy he ihoird have made him & party by a crof's bill, or by his anfwer in nature of a cro¡s bill -itwasfuf. ficient for Ma-ehir to maka Craig a party, who w¿$ trufl-.a for him, vv;th-out the pet ion who created the truft to his ufe.
This court accords with the circuit court in the figure and position given to the second entry in the chain; that is to say, that Stewart’s settlement of 400 acres, ought to adjoin the said Williams’s settlement on the west, extending westward for quantity, in a square figure. But this court cannot accord with the said circuit court in bringing into operation the entry of the pre-emption warrant made by Stewart and Thompson on the 23d of May, 1783; as the subsequent entry, and “eventual” position of Stewart’s pre-emption warrant is to be thrown aside in construing Williams’s previous entry of 1000 acres, which is the third link in the chain, it follows, that the manner of surveying the said entry of Williams, as assignee of Panned, as directed by the circuit court, is erroneous.
The parties have agreed that Lee’s creek and Lawrence’s creek, as represented on the connected plat, were generally known by those names respectively as early as the fall of 177 9. The reference to these streams in Williams’s entry, may be regarded as a good description of the neighborhood, but not as giving a special location of the land to be appropriated. It is then to be considered, whether the expressions “ adjoining William Stewart’s settlement and pre-emption on the west side” can support this entry. The settlement of Stewart is a good object of location, but his pre-emption was only a potential claim at the date of Williams’s entry — -it had no precise location ; his certificate, granted by the commissioners, contained a note of the quantity, but no location of the pre-emption. This principle has been settled by repeated decisions, particularly in the cases, Woods vs. Patrick & ux. printed decisions p. 66, Alstads vs. Miller, and Crow's heirs vs. Harrod's heir, decided at the last term. A majority of the court (the chief justice dissenting) are of opinion, that the call for *13 the pre-emption must be rejected as a surplusage which cannot vitiate. The maxim “ utile per inutile non viti-aturn well applies. By the decisions before cited it seems settled, that a pre-emption appendant to a settlement, (and such Stewart’s is, according to the facts agreed,) before the location thereof with the surveyor, is not a subject to which an entry can attach — it is not in esse, so as to uphold a location. The call for Stewart’s pre-emption, when it existed only in embryo, not germinated into visible existence, withoutfigure and without position, ought not, in the opinion of a majority of the court, to be adjudged tnisleading or deceptive. Whether the pre-emption had been located or not, could have been ascertained by resort to the book of entries, a public record, of which all persons were bound to take notice : the call for the unlocated pre-emption therefore differs widely from a call for an object, the entity or nonentity of which can only be ascertained by an enquiry in pais. Disregarding Stewart’s pre-emption as a harmless nonentity, John Williams’s entry, as assignee of Pannell, (the third entry in the chain,) ought to be surveyed in a square, adjoining and on the west of Stewart’s settlement of 400 acrest as before directed.
The entry of Williams for 1000 acres, made on the 22d of May, 1780, cannot be supported, as the “improvements made by Simon Butler” are not shewn. The situation of these improvements, in relation to Williams’s other tract of 1000 acres, which is to be adjoined, might materially affect the figure of the survey to be made by virtue of this entry. How far along the southern boundaiy the former entry should be adjoined, whether this entry should be right angled or oblique angled, and how proportioned in length and breadth, so as to include the improvements made by Butler, are questions which the complainant ought to have solved by shewing those improvements. Claiming under the entry, and seeking relief in equity, he ought not to be permitted to exhibit so many of the objects called for in the entry as suited his purpose, and thus to ask a constructive figure upon a part only of the entry, which may be materially variant from that construction which would be given upon the whole instrument. — (See Craig and Johnson vs. Doran and Ashley, and Cox vs. Smith.) As the locator has called for improvements made by *14 Butler, we cannot presume that none were so made ; and in the absence of those improvements, the complainant’s claim to relief under this entry is incomplete. So far then as the original survey on John Williams’s entry, as assignee of Pannell, made op the 11th of May, 1780, interferes with the elder grant to Tabb, and will likewise be included by the said entry when surveyed as herein before directed, if any, the complainant was entitled to relief.
The second ground of equity set up in the bill, is by virtue of a contract between Craig and Kennedy, of whom Craig purchased one sixth of Tabb’s claim. That part of the agreement which is relied on, is in these words : “-- And whereas an entry of John Williams interferes with the said entry made in the name of Tabb, and whereas the said Kennedy hath agreed, in case the said entry made in the name of Tabb should prove a better claim than that made in the name of Williams, that then the said Kennedy would convey to John Ma-chir two hundred and fifty acres, part of said entry in the name of Tabb — the said Craig agrees, that if so much of the said Williams’s entry as interferes with. Tabb’s should be lost, that he will convey to said Ma-chir two hundred and fifty acres, adjoining him, the said Machir, on Tabb’s line; but that if it shall so happen, that said Williams’s entry shall be established, that ha, th» said Craig, will pay the said Kennedy the sum of seventy-five pounds as soon as that fact can be ascertained_”
Craig insists, that he had to purchase of other persons a certain parcel of land, containing 840 acres, sold by Kennedy to him, and mentioned in the agreement aforesaid, (a part of Tabb’s claim,) over and above Kennedy’s sixth part — that the consideration upon which he was induced to enter into the agreement with Kennedy has therefore failed pro tanto, and that he is not bound to convey the 250 acres to Machir, unless he will pay the value thereof to him, the said Craig ; and upon those terms he is willing to convey. •' It was farther contended, that Machir was no party to the agreement between Kennedy and Craig, and therefore not entitled to the benefit of it. But Craig must be considered as a purchaser from Kennedy with notice of Machir’s previous purchase, of which the before recited agreement is complete evidence ; wheieby Craig *15 became voluntarily and expressly a trustee for Machir, bound to perform the agreement of Kennedy with Ma-chir, in the same manner that Kennedy himself was bound to perform it.’’ If there were any circumstances, as between Kennedy and Machir, which could excuse Kennedy from the performance, and which Craig was entitled to have the benefit of, he should have made Kennedy’s heirs parties to the suit by his answer, in nature of a cross bill, (according to statute,) or he should have exhibited his cross bill. As Craig held the legal title, and was the trustee, to the use of Machir, it was sufficient for Machir’s purpose to bring Craig before the court; it was unnecessary for Machir to bring the person before the court who created the trust, but of whom he could ask nothing. Some doubt existed as to the operation of the agreement on the partial success of Williams’s claim over that of Tabb ; but, upon consideration, it seems to be the fair construction, that Kennedy was to secure to Machir, at all events, 250 acres of the interference. And therefore, if upon experiment it shall be found, that the interference between Tabb’s claim and that of Machir under Williams’s entry, when S'irveyed in conformity with this opinion, is not equal to 250 acres, that then Craig shall be decreed to convey as much more as will make up the compliment of 250 acres (according to the said before recited agreement) adjoining Machir; or in case there shall be no interference, then the whole 250 acres.
Wherefore, it is decreed and ordered, that the said decree of the Mason circuit court be reversed, set aside and annulled ; that the cause be remanded to the said circuit court, that farther proceedings may be had therein upon the principles contained in the foregoing opinion, and that right and justice may be done between the parties by carrying the said opinion into effect; and also, that such decree respecting costs may be made between the parties as equity shall require. Which is ordered, to be certified to the said court.
And it is farther decreed and ordered, that the appel-lee pay to the appellant his costs in this court and this behalf expended,